UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)LARRY TUBBS,<br><br>Plaintiff,<br><br>v.<br><br>(2) COMMERCE & INDUSTRY INSURANCE COMPANY, and (3) AIG DOMESTIC CLAIMS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-08-1014-F |

**DEFENDANTS' RESPONSE AND OBJECTION TO PLAINTIFF'S DKT. NO. 99 MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT, JIM SCHRATZ**

COME NOW the Defendants, Commerce & Industry Insurance Company and AIG Domestic Claims (hereinafter Defendants) to respond and object to Plaintiff's Motion (Dkt. No. 99) to Exclude Testimony of Defendants' Expert, Jim Schratz. In support, Defendants would show the Court as follows:

## STATEMENT OF PERTINENT FACTS

Plaintiff Tubbs has alleged that Defendants' "bad faith" in "handling" Plaintiff's worker's compensation claim caused him damages. See Dkt. No. 48, Plaintiff's First Amended Complaint. The main (and only actionable) component of his claim is that Defendants allegedly delayed in providing him a computer. See Exhibit 1 attached hereto, Plaintiff's Response to Defendants' Interrogatories, Response to Interrogatory No. 8; see also *Sizemore v. Continental Casualty Co.*, 142 P.3d 47, 54 (Okla. 2006) (85 O.S. §12 does not bar a tort action against a worker's compensation carrier who will not pay an injured worker's award of compensation). Since the time the worker's compensation court ordered that LDH Vocational Rehabilitation Consultants coordinate the purchase of an appropriate computer (to be funded by Defendant insurer) and supervise Plaintiff's taking various computer courses at Great Plains Technology Center, the operating programs for the "computer" to be paid for by Defendant insurer changed. Plaintiff has also alleged complications with his low back necessitating surgery. See Exhibit 2 attached hereto, series of LDH Vocational Reports. Additionally, Plaintiff has not been able to articulate his alleged damages. See Exhibit 1, Response to Interrogatories 6 and 10. See also Defendants' Objection to Plaintiff's Exhibits, Dkt. No. 105 filed herein, No. 12 (speculation about jobs Plaintiff might have gotten, despite his four-felony-conviction record [Comanche County CRF 78-170, CRF 83-161, CRF 87-199, and CRF 96-310] and his non-completion of high school.) No depositions have been taken in this case to date.

Plaintiff has moved to exclude Mr. Schratz's expert testimony on behalf of Defendants regarding practices of the insurance industry. Plaintiff apparently does not contest that Mr. Schratz has technical expertise in the insurance industry to qualify him as an expert. Plaintiff complains that Schratz's testimony is merely a "personal" opinion and is neither reliable ("methodology" subjective) or irrelevant as providing no assistance to the trier of fact, based only on Schratz's report. Plaintiff has not requested and has not taken the deposition of Mr. Schratz. Plaintiff has not listed an expert witness. Defendants respond and object to Plaintiff's Motion to Exclude Mr. Schratz.

## ARGUMENT AND AUTHORITY

### I. THE COURT'S ROLE AS GATEKEEPER IS PROPERLY EXERCISED IN ALLOWING MR. SCHRATZ TO TESTIFY.

Federal Rule of Evidence 702 provides for the admission of "scientific, technical, or other specialized knowledge" if it will "assist the trier of fact to understand evidence or to determine a fact in issue." In that case, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under F.R.E. 702, the trial court must act as a "gatekeeper" to exclude "junk science" that does not meet Rule 702's reliability standards by making a preliminary determination that the expert's testimony is reliable. See *Elsayed Mukhtar v. Cal. State University, Hayward,* 299 F.3d 1053, 1063 (9th Cir. 2002), citing *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S 137, 147-48, 119 S. Ct. 1167 (1999); *General Electric Co. v. Joiner*, 522 U.S. 136, 142, 118 S. Ct. 512 (1997); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 583-90, 592-93, 113 S. Ct.

2786 (1993). The objective of the gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

Faced with a proffer of expert testimony, the trial judge must determine at the outset pursuant to F.R.E. 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Daubert*, 509 U.S. at 592-93. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. *Id.* Furthermore, proposed evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue." See *Daubert*, 509 U.S. at 591. This requirement goes primarily to relevance.

Factors to be considered include: (1) whether the evidence can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the determination of a degree of acceptance within the relevant scientific community. See *Daubert*, 509 U.S. at 593-94. However, a *Daubert* reliability inquiry is a flexible one and focuses on the evidentiary relevance and reliability underlying the proposed submission, not on the conclusions that they generate. *Id.* at 595. The "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admission. *Id.* at 591.

Such rules apply to all expert testimony, not just scientific testimony. *Kumho Tire Co.*, 526 U.S. at 47-49, 119 S. Ct. at 1174-76. Experts of all kinds tie observations and conclusions through the use of "general truths" derived from specialized experience. *Id.* at 149 (quotations

omitted). The expert's testimony will often rest "upon an experience confessedly foreign in kind to [the jury's] own." *Id.* (quotations omitted). A trial court should consider the specific factors of *Daubert* where they provide reasonable measure of the reliability of expert testimony. The trial judge must determine whether the testimony has a reliable basis and the knowledge and experience of the relevant discipline. *Id.* at 149.

Herein, Mr. Schratz's report (which is, of necessity, fairly short and does not provide the detail that Plaintiff's taking his deposition would provide) indicates that his testimony will deal with insurance industry standards and practices for reasonableness. Any objection to certain areas of his expert testimony which can be supported would be subject to limitation, without the exclusion of his entire testimony. Additionally, Plaintiff's objections go to the weight, not the admissibility of his testimony. Plaintiff does not generally object to Mr. Schratz's qualifying as an expert.

## II. SCHRATZ IS QUALIFIED AS AN EXPERT ON INSURANCE INDUSTRY STANDARDS AND PRACTICES, INCLUDING THOSE APPLICABLE IN THIS CASE.

Schratz has long experience in the insurance industry, including a law degree. See report and resume of Schratz, Exhibit 2 to Plaintiff's Motion to Exclude, Dkt. No. 99. He has dealt with claims, claims handling, and bad faith issues, as well as industry standards on such issues. He has worked on many levels. He is familiar with standards of reasonableness in the insurance industry and the claims handling area. He is more than eminently qualified to discuss the reasonableness of claims handling practices in the subject circumstances. See *Crowley v. Chait*, 322 F. Supp. 2d 530, 538-39 (D.N.J. 2004) (Extensive experience in the general insurance industry disciplines at issue, underwriting and surplus lines insurance, qualified these prospective witnesses as experts.) Any objection to any particular statement potentially to be made by Mr.

Schratz can be dealt with on an individual basis, rather than by blanket exclusion.

## III. THE ELEMENTS OF OKLAHOMA BAD FAITH LAW REQUIRE ADMISSION OF MR. SCHRATZ'S TESTIMONY.

To prevail on a claim of bad faith under Oklahoma law, there must be a clear showing that the insurer acted unreasonably and in bad faith. See *Oulds v. Principal Mutual Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). Acting on the basis of a legitimate dispute over coverage or the amount of the claim does not implicate the tort of bad faith. *Id.* There must be present sufficient evidence reasonably tending to show bad faith. *Timberlake Const. Co. v. United States Fidelity and Guaranty Co.*, 71 F.3d 335, 343 (10th Cir. 1995). The essential elements an insured must prove in order to make out a prima facie case for bad faith are: (1) the insured was covered under the subject policy and the insurer was required to take reasonable actions in handing the claim; (2) the actions of the insurer were unreasonable under the circumstances; (3) the insurer failed to deal fairly and act in good faith toward the insured in the handling of the claim; and (4) the breach or violation of the duty of good faith and fair dealing was the direct cause of any damages sustained by the insured. See *Badillo v. Mid-Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005). The minimum level of culpability is more than simple negligence but less than the reckless conduct necessary to support a punitive award against the insurer. *Id.* at 1094.

Herein, Plaintiff received an award for non-monetary benefits, that is, Option A suggested by LDH Consultants. See Orders of the worker's compensation court of 11-13-07 and 3-26-08, Exhibits 5 and 9 of Defendant's Motion for Summary Judgment, Dkt. No. 103, filed herein. Option A of the LDH Consultants recommendations included several short term classes in computer information be coordinated and monitored by LDH Consultants, Inc. with the cost of a computer with unspecified options up to $1,200.00. See Exhibit 2 attached hereto, LDH Vocational Evaluation of 8-27-07, pp. 7-8. LDH, the vocational rehabilitation consultants to

which Plaintiff was referred by the worker's compensation court, was to coordinate and monitor "Option A" pursuant to the court's orders. Proceeding with the classes, getting the Plaintiff enrolled, paying for the classes, payments for tuition and books and supplies, as well as provision of a computer with the appropriate options was part of LDH Consultant's coordination responsibilities. Provision to the Plaintiff of a computer paid for by Defendant insurer with the appropriate options was to be part of the coordination of monitoring by LDH in concert with Plaintiff's enrolling for, attending, and passing, certain specified classes at Great Plains Technology Center. See Exhibit 2, 8-28-07 report. Thus, whether the insurer's actions were reasonable "under the circumstances" as the insurer claims and whether the insurer acted in good faith toward the Plaintiff under the circumstances, will be issues for the jury. (Defendants have filed a Motion for Summary Judgment asserting that Defendants are entitled to judgment as a matter of law on Plaintiff's claims against them. However, the subject argument regarding the admission of Mr. Schratz's testimony is made in the event the court finds that there are genuine issues of material fact.)

## IV. SCHRATZ'S TESTIMONY IS RELIABLE AND SHOULD BE ADMITTED.

Plaintiff complains about Schratz's methodology in referring to some facts in the record and not to others. First, Plaintiff has not taken Schratz's deposition. Second, those objections go to the weight and credibility of Schratz's testimony for the trier of fact, not to admissibility.

To be admissible, the expert's experience does not have to be in the specific field under scrutiny. The expert's long experience in the field of insurance adjustment and claims processes qualified him to offer an opinion about the reasonableness of the insurer's handling of a first party fire claim. See *Talmage v. Harris*, 354 F. Supp. 2d 860, 866 (W.D. Wis. 2005). The expert did not have to be an "expert fire loss adjuster" in order to speak about the reasonableness

of the insurer's adjustment of a fire loss claim. Where the claim did not involve evidence concerning complex industry practices or procedures, the expert could testify based on his experience with insurance claims. *Id.* Thus, Plaintiff's allegation herein that Schratz's experience is not in the area of "Oklahoma bad faith law" is without support.

Additionally, such testimony with regard to the reasonableness of the insurer's actions based on practices in the insurance industry has been found reliable as well as related to the issues implicated in a bad faith claim and, thus, admissible. For example, in *Ford v. Allied Mutual Ins. Co.*, 72 F.3d 836, 841-42 (10th Cir. 1996), the court held that defendant insurer's "bad faith" expert's testimony was admissible. Specifically, the expert testified that the insurer was relying on industry practice that before a payment under UIM coverage was made, the insurer looked at the total coverage available at the time of the accident. *Id.* at 841. Such approach was supported by Iowa law, the applicable law. *Id.* The expert also properly testified regarding the insured as being in an arm's length relationship with the insurer (again, supported by Iowa law) and the practice in the industry of regarding a tractor and trailer together as one vehicle. *Id.*

Also, Plaintiff's complaints herein about Schratz's "methodology" are unfounded. The testimony of Mr. Schratz is more akin to the "technical" knowledge as described in *Kumho Tire Co.*, than to traditional scientific knowledge. In such cases, the emphasis is placed not on methodology, but on the professional and personal experience of the witness. See *Crowley*, 322 F. Supp. 2d at 539, citing, *inter alia*, *Kumho Tire*, 526 U.S. at 152. The methodology of proffered non-scientific testimony need not be subjected to rigorous testing for scientific foundation or peer review. *Id.* (citations omitted). Even inconsistent applications of methodology by two experts was not a basis for exclusion of their testimony, but rather went to

the weight and credibility of their testimony. *Crowley*, 322 F. Supp. 2d at 540-41. As to yet another expert, the *Crowley* court stated that the fact that the expert applied industry standards was sufficient. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable testimony. *Id.* at 541-42. The witness's (Cerone's) standards were those he learned as a claims examiner at various insurance companies and that he expected the 8,400 claims personnel at Travelers to use when he supervised them. This was sufficient for admission. *Id.* at 442.

Herein, in addition, Mr. Schratz reviewed the claim file, not just excerpts of deposition transcripts that were selected by the party who sponsored him. Thus, he conducted an independent analysis, not just a "testing" of testimony, which was not the expert's job. *Id.* at 542. Parts of the expert's report which relied on deposition testimony preselected by the sponsoring party could be excluded. *Id.* at 542, and at 545-47. That is not the case herein. See also, *Wisdom v. The TJX Companies, Inc.*, 410 F. Supp. 2d 336, 341-43 (D. Vt. 2006), where the court held that the plaintiff's expert's testimony as to the defendant's alleged failure to follow proper safety procedures was admissible. The court held that the expert's non-consideration of alternative explanations to his analysis was not a basis for exclusion, but rather went to the weight of his testimony. *Id.* at 342. The *Wisdom* court reserved judgment on admission of that same expert's testimony regarding a defect in clothing rack design, pending completion of discovery regarding incidents concerning similar clothing racks at TJX stores. *Id.* at 343. The *Wisdom* court also held that opposing party's complaints that the expert's testimony was no more than common sense observations were unfounded. The expert's opinion carried greater weight than that of a lay person because of the expert's extensive background and experience in retail safety. *Id.* at 341.

It is only conclusory allegations with no supporting facts that have no probative value. Where the expert's conclusory allegations were based on facts that were shown to be false, the expert's opinion was an unsupported assumption and was not admitted. See *Kitto v. Farmers Ins. Co., Inc.*, 39 F.3d 1192, 1994 WL 637013 at *3 (10th Cir. 1994), unpublished opinion, citing Oklahoma bad faith law. Furthermore [in response to Plaintiff's citation of *Zarecki v. Nat'l R.R. Passenger Corp.*, 914 F. Supp. 1566, 1574-75 (N.D. Ill. 1996), a case where the court used Tubbs's cited language to discuss the sufficiency of expert evidence under Fed. R. Civ. P. 56(e) to support a response to a motion for summary judgment], the issue of admissibility of an expert's opinion is separate and distinct from the issue of whether the testimony is sufficient to withstand a motion for summary judgment under Rule 56. See *Kitto*, 1994 WL 637013 at *4, citing *Ambrosini v. Labarraque M.D.*, 966 F.2d 1464, 1470 (D.C. Cir. 1992).

Furthermore, Plaintiff's invocation herein of blanket exclusion of Mr. Schratz's testimony based on alleged imposition into the court's province in instructing the jury on the law is unfounded. Blanket exclusion of proposed expert testimony on all issues is not appropriate, especially under the circumstances herein. For example, in *American National Fire Ins. Co. v. Mirasco*, 265 F. Supp. 2d 240, 252-53 (S.D. N.Y. 2003), a declaratory judgment action on insurance coverage, the court allowed testimony of the insurance company's expert regarding the customs and practices in the cargo insurance industry. Such testimony was clearly relevant and admissible, "as experts may testify as to the customary practice in a profession or industry." *Id.* at 252. An expert may include factual conclusions and opinions that embody legal conclusions that approach the court's duty to instruct on the law. See *id.* In *Mirasco*, the court excluded the expert's testimony as to the parties' intent as to coverage, and whether the cargo at issue was "rejected," as invading the province of the trier of fact. *Id.*

As a result, under applicable principles of law discussed in *Daubert* and *Kumho,* and cases relying on *Daubert* and *Kumho*, Mr. Schratz's testimony is more than sufficient to be admitted as reliable.

## V. SCHRATZ'S TESTIMONY IS RELEVANT AND ADMISSIBLE AS ASSISTING THE TRIER OF FACT.

Expert testimony on technical or "other specialized knowledge" can fulfill the prerequisite of an expert evidence inquiry, that is, to determine whether the testimony would be helpful to the jury in resolving the fact issues. See *Hutchison v. Cutliffe*, 2004 WL 5524566 at *2 (D. Me. 2004), unpublished opinion. In *Hutchison*, a civil rights case, the court held that the proposed expert's testimony on police use of force and police practice and procedure involved the type of specialized knowledge which one attributed to an expert. It would assist the trier of fact as to whether defendant's use of force was reasonable under the circumstances, although the expert would not be allowed to opine about the ultimate reasonableness of the force used. *Id.*

In the insurance context generally, and in the bad faith context particularly, expert testimony has been allowed as assisting the trier of fact. In *Lone Star Steakhouse and Saloon, Inc. v. Liberty Mutual Insurance Group,* 343 F. Supp. 2d 989, 1015-16 (D. Kan. 2004), the court held that the expert's opinion relating to insurance industry standards and practices and whether the insurer's conduct conformed to such standards was admissible. The expert could explain claims handling practices generally and insurance industry standards relating to timely investigation, reservation of rights, and coverage determinations. Such opinions might be relevant to the insured's claim that the insurer breached its obligation of good faith and also to the insured's claim of estoppel. *Id.*

In *Moses v. Halstead*, 477 F. Supp. 2d 1119, 1124-25 (D. Kan 2007), an insurance bad faith case alleging failure of the liability insurer to settle in good faith a liability claim against the

insured, the court allowed testimony of an expert with experience in handling insurance defense cases regarding the standard of care regarding that process. Such testimony would be helpful to the Court. *Id.* Expert testimony regarding insurance industry standards and practices and whether the insurance company's actions conformed to those industry standards is admissible as assisting the trier of fact. *Id.*, citing *Lone Star*, 343 F. Supp. 2d at 1014-16. See also *Bonenberger v. Nationwide Mutual Ins. Co.*, 791 A.2d 378, 382 (Pa. Super. 2002) (expert testimony as to insurer's conduct in not settling a liability claim was admissible to aid the court as the trier of fact in evaluating a bad faith claim); *Liberty Mutual Ins. Co. v. Davis*, 412 F.2d 475, 483 (5th Cir. 1969), abrogated on other grounds, *Venn v. St. Paul Fire and Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir. 1996) (same); *Clearwater v. St. Farm Mutual Auto Ins. Co.*, 780 P.2d 423, 428 (Az. Ct. App. 1989), overruled on other grounds, *Clearwater v. St. Farm Mutual Auto Ins. Co.*, 792 P.2d 719 (Az. 1990) (same); *Johnson v. American Family Mutual Ins. Co.*, 674 N.W. 2d 88, 91 (Iowa 2004) (same). The same result was reached in *Worden v. Tri-State Ins. Co.*, 347 F.2d 336, 340-41 (10th Cir. 1965), a pre-*Daubert* case (such evidence served to assist the jury in the rather complex matters involving settlement of a personal injury claim.)

In a first party case, the court held that the expert's testimony on the insurance industry standard for good faith and fair dealing in the investigation and handling of insurance claims was admissible. See *Hatch v. State Farm Fire and Casualty Co.*¸ 930 P.2d 382, 389 (Wyo. 1997). The expert's testimony about a speculative, extraneous and non-legal standard of being "a good neighbor" was not admissible. *Id.*

In *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500, 515 (6th Cir. 1998), a products liability case, the court held that a safety expert's testimony was admissible as an aid to the jury in making a decision about the safety of the motorcycle at issue. The witness was

allowed to testify broadly on motorcycle safety, even touching on related issues. The *Morales* court held that the fact that the proffered expert might be unfamiliar with pertinent statutory definitions or standards was not grounds for disqualification. Such alleged lack of familiarity went to the weight of the expert's testimony, not its admissibility. *Id.*

Plaintiff's citation of authority in its motion, Dkt. No. 99, is inapposite. In *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890-91 (6th Cir. 1996), abrogated on standard of review grounds, see *Morales*, 1515 F.3d 500, 515, citing, *inter alia, General Electric Co. v. Joiner*, 522 U.S. 136, 1118 S. Ct. 512, 515 (1997), the court held that the expert's testimony regarding the subjective intent of the parties as to the character of their relationship was inadmissible. The Defendants herein through their use of expert witness Schratz, do not seek to speculate about intent of the parties' contract. In *North Star Mutual Ins. Co. v. Zurich Ins. Co.*, 269 F. Supp. 2d 1140, 1147 (D. Minn. 2003), a declaratory judgment action concerning the issue of binding coverage, the court excluded the expert testimony because it was speculative as to what the parties and their agents knew or assumed and made conclusions about coverage and its being bound. In that case, the expert testimony's only connection between the data and his expert opinion was the "*ipse dixit*" of the expert without reference to insurance practice. *Id.* at 1147-48. Mr. Schratz's report makes plain that is not the case herein with regard to the use of Mr. Schratz's testimony.

Mr. Schratz's opinion per his report attached as Exhibit 2 to Plaintiff's' Dkt. No. 99, is based on insurance industry standards and practices and reasonableness as to same. He will not presume to "instruct the jury on the law of the case." The court can allow his testimony on insurance industry standards, practices, and the reasonableness of same and prevent him from instructing on the law. See *North American Specialty Ins. Co. v. Britt Paulk Ins. Agency*, 2007

WL 268817 at *3 (E.D. Okla. 2007) cited by Plaintiff. See also cases cited in IV, *supra*. Mr. Schratz's testimony will assist the trier of fact.

**CONCLUSION**

As a result of the foregoing, Defendants submit that Mr. Schratz's testimony meets the requirements of Rule 702 and *Daubert*, *Kumho Tire*, and their progeny. The testimony proffered is relevant and reliable. Plaintiff's Motion to Exclude Schratz's Testimony, Dkt. N. 99, should be denied.

Respectfully submitted,

/s/Michelle B. Skeens

Steven E. Holden, OBA #6289
Michelle B. Skeens, OBA #20406
**HOLDEN CARR & SKEENS**
200 Reunion Center
9 East 4th Street
Tulsa, OK 74103
918-295-8888
918-295-8889 (facsimile)
***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

J. Derek Ingle
RYAN BISHER RYAN

Rick W. Bisher
RYAN BISHER RYAN

/s/Michelle B. Skeens

Michelle B. Skeens